UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

AUSTIN T. DYER                                          CIVIL ACTION

VERSUS                                                  NUMBER: 10-4625

BURL CAIN, WARDEN                                       SECTION: "J"(5)

### REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(A), presently before the Court is the 28 U.S.C. §2254 application for federal habeas corpus of petitioner, Austin T. Dyer, along with his supporting memorandum, the State's response, and Dyer's reply. (Rec. docs. 1, 11, 17, 20).  Having determined that an evidentiary hearing is not necessary, it is recommended, for the reasons that follow, that Dyer's petition be dismissed with prejudice.

### I.   PROCEDURAL HISTORY[1]

On July 2, 1998, the Jefferson Parish District Attorney filed a bill of information charging petitioner, Austin Dyer, with one count of armed robbery, a violation of La. R.S. 14:64.  On July

_____

[1]A portion of the procedural history is taken from the Louisiana Fifth Circuit Court of Appeal's opinion, State v. Dyer, 794 So.2d 1 (La. App. 5 Cir. April 24, 2001).

9, 1998, petitioner was arraigned in the Twenty-Fourth Judicial District Court for the Parish of Jefferson and entered a plea of not guilty.  On October 21, 1998, petitioner's motion to suppress identification and motion to suppress oral statements were heard and denied.  That same day, a twelve-member jury was selected and sworn.  After the conclusion of trial and their deliberations, on October 22, 1998, the jury found petitioner guilty as charged.  On November 5, 1998, the trial court sentenced petitioner to serve fifty years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.

On November 9, 1998, the State filed a multiple offender bill of information alleging that petitioner's penalty on the underlying felony conviction should be enhanced because he had three previous felony convictions.  On November 20, 1998, petitioner denied the allegations of the multiple offender bill of information.  On January 8, 1999, the State filed an amended multiple offender bill of information alleging that petitioner had four previous felony convictions.  That same day, petitioner again denied the allegations of the multiple offender bill of information.

On June 4, 1999, after a hearing on the multiple offender bill of information, the trial court took the matter under advisement. On July 2, 1999, the trial court found that petitioner had two previous convictions which could be used to enhance the

penalty for his underlying felony conviction.  On September 10, 1999, the trial court, based on its previous finding that petitioner was a third felony offender, sentenced petitioner to life imprisonment without benefit of parole, probation, or suspension of sentence.  Petitioner sought an out-of-time appeal, which was granted on October 18, 2000.

On April 24, 2001, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction, sentence and multiple offender adjudication, State v. Dyer, 794 So.2d 1 (La. App. 5 Cir. April 24, 2001), and, on June 27, 2003, the Louisiana Supreme Court denied petitioner's writ application.  State v. Dyer, 847 So.2d 1256 (La. 2003).  The Louisiana Fifth Circuit, however, remanded the matter to the trial court for resentencing because the trial court failed to vacate petitioner's initial 50-year sentence prior to imposing his multiple offender life sentence.  Pursuant to the appellate court's remand, the trial court, on May 18, 2001, vacated petitioner's original 50-year sentence and re-sentenced petitioner as a multiple offender to life imprisonment.[2]

Petitioner filed an appeal in connection with his re-sentencing, complaining that his life sentence was excessive.  On November 27, 2001, the Louisiana Fifth Circuit rejected petitioner's argument, affirming his life sentence as a multiple

---

[2]A copy of the 05/18/2001 minute entry documenting petitioner's re-sentencing is contained in the St. rec., vol. 6.

offender.[3]  <u>State v. Dyer</u>, 806 So.2d 184 (Table), No. 2001-KA-654 (La. App. 5 Cir. Nov. 27, 2001) (unpublished opinion).[4]  On January 24, 2003, the Louisiana Supreme Court denied petitioner's writ application.  <u>State v. Dyer</u>, 836 So.2d 35 (La. 2003).

Following the completion of his direct appeal proceedings, petitioner filed an application for post-conviction relief which both the district court and the appellate court determined to be untimely.  The Louisiana Supreme Court, however, found that petitioner's writ application was timely and, as such, remanded the matter to the district court to consider the merits of petitioner's post-conviction application.  <u>State ex rel. Dyer v. State</u>, 888 So.2d 185 (La. 2004).

On January 17, 2006, counsel filed on petitioner's behalf a supplemental application for post-conviction relief in which several claims were raised, including ineffective assistance of trial counsel.[5]  Thereafter, counsel filed a second supplemental

---

[3]The state appellate court, however, remanded the matter for the purpose of having the trial court provide petitioner with written notice of his prescriptive period for seeking post-conviction relief.

[4]A copy of the state appellate court's unpublished opinion is contained in the St. rec., vol. 6.

[5]A copy of petitioner's supplemental post-conviction application is contained in the St. rec., vol. 7.

application for post-conviction relief.[6]  The district court, in connection with petitioner's post-conviction application, held a total of three evidentiary hearings including one where petitioner's trial counsel, Derrick Shepherd, offered testimony. On July 11, 2007, the district court issued a Judgment with Reasons denying petitioner's ineffective assistance of counsel claim on the merits and denying petitioner's remaining claims on procedural grounds.[7]

On November 29, 2007, the Louisiana Fifth Circuit denied petitioner's writ application in part and granted it in part. Specifically, the appellate court found no error in the district court's denial of petitioner's claim that his counsel was ineffective.  Additionally, the court of appeal affirmed the district court's denial of three claims on procedural grounds, holding that these claims were fully litigated on appeal and were barred pursuant to La.C.Cr.P. art. 930.4(A).  However, the Louisiana Fifth Circuit, with regard to the remaining claims, vacated the district court's ruling denying said claims because they should have been raised on appeal.  The appellate court remanded those claims to the district court with instructions to order petitioner to state reasons for his failure to raise the

---

[6]A copy of petitioner's second supplemental post-conviction application is contained in the St. rec., vol. 7.

[7]A copy of the district court's July 11, 2007 Judgment with Reasons is contained in the St. rec., vol. 7.

claims on appeal.  <u>State v. Dyer</u>, No. 2007-KH-0635 (La. App. 5 Cir. Nov. 29, 2007) (unpublished opinion).[8]

On December 21, 2007, petitioner, through counsel, filed a writ, No. 2007-KP-2453, with the Louisiana Supreme Court seeking review of that portion of the appellate court's order affirming the denial of his ineffective assistance of counsel claims.[9]  On March 27, 2008, the district court issued an Order holding the matter in abeyance until the Louisiana Supreme Court ruled on Writ No. 2007-KP-2453.[10]  On January 16, 2009, the Louisiana Supreme Court denied petitioner's writ application.  <u>State v. Dyer</u>, 998 So.2d 92 (La. 2009).

Pursuant to the appellate court's directive, the district court held an evidentiary hearing to ascertain what reasons petitioner had for failing to raise his procedurally barred claims on appeal.  Following the conclusion of the hearing, the district court took the matter under advisement.  On May 13, 2009, the

---

[8]A copy of the appellate court's November 29, 2007 unpublished opinion is contained in the St. rec., vol. 7.  On December 4, 2007, a "Corrected Disposition" of the appellate court's November 29, 2007 decision was issued reflecting that Judge Wicker concurred in the court's November 29, 2007 decision. A copy of the "Corrected Disposition" is contained in the St. rec., vol. 7.

[9]A copy of petitioner's December 21, 2007 writ application is contained in the St. rec., vol. 11.

[10]A copy of the district court's March 27, 2008 Order is contained in the St. rec., vol. 8.

district court issued its Judgment, finding that "petitioner's failure to raise these claims on direct appeal was inexcusable" and, as such, said claims "are **DENIED** as being procedurally barred [emphasis original]."[11]  Petitioner filed a writ application with the court of appeal.

On October 20, 2009, the Louisiana Fifth Circuit denied petitioner relief.  State v. Dyer, No. 2009-WR-0629 (La. App. 5 Cir. Oct. 20, 2009) (unpublished opinion).[12]  On October 29, 2010, the Louisiana Supreme Court likewise denied relief.  State v. Dyer, 48 So.3d 289 (La. 2010).

Petitioner is now before this Court seeking federal habeas relief under §2254.  In his habeas application, petitioner raises the following claims: 1) he received ineffective assistance from trial counsel, Derrick Shepherd; 2) the state court did not conduct a full and fair hearing regarding whether petitioner should be excused for failing, on direct appeal, to raise his claim that the State misused its peremptory challenges to eliminate minorities from the jury; 3) the state court did not conduct a full and fair hearing regarding whether petitioner should be excused for failing, on direct appeal, to raise his claim of prosecutorial misconduct;

_____

[11]A copy of the district court's May 13, 2009 Judgment is contained in the St. rec., vol. 9.

[12]A copy of the state appellate court's October 20, 2009 unpublished opinion is contained in the St. rec., vol. 9.

4) the state court did not conduct a full and fair hearing regarding whether petitioner should be excused for failing, on direct appeal, to raise his actual innocence claim; and, (5) the state court did not conduct a full and fair hearing of petitioner's claim that he was granted leave to raise certain issues on post-conviction.

The State submits that the instant action is timely (rec. doc. 17, p. 9), and that the claims have been properly exhausted as required under Rose v. Lundy, 455 U.S. 509 (1982). (Rec. doc. 17, pp. 9-10). Accordingly, this Court shall proceed to analyze petitioner's claims following its review of the facts and standard of review.

## II. FACTS[13]

At about 11:00 a.m. on Saturday, October 25, 1997, Barbara Heitmeier was working alone at her retail store, the Oldies but Goodies Antique Shop on the Westbank Expressway in Marrero, when two men entered the store. The two men, one later described as heavy-set and one described as skinny, looked around the store for about twenty to thirty minutes. The heavy-set man, later identified as Troy Slater, asked if the store delivered. Mrs. Heitmeier told him no. Before leaving, Slater told Mrs. Heitmeier

---

[13]The facts are taken from the Louisiana Fifth Circuit's opinion, State v. Dyer, 794 So.2d 1, 4-6 (La. App. 5 Cir. April 24, 2001).

that they would be back with a truck.

Later that afternoon, at about 2:15 p.m., the two men returned. Mrs. Heitmeier was waiting on other customers when the men arrived, but the two men indicated that they were waiting for their mother to come to the shop to look at a bed before they purchased it. After all the other customers left the store, Slater asked Mrs. Heitmeier if the bed could be disassembled. When she knelt down to check, he put a gun to her head and said, "Don't move. Don't get up. Don't turn around; don't look at my face."

Next, after making sure that there were no other customers in the store, he led Mrs. Heitmeier to the store's bathroom and forced her inside. Slater removed a diamond pendant from Mrs. Heitmeier's neck and demanded her watch, which he took from her wrist. Slater ordered Mrs. Heitmeier to remain in the bathroom and shut the door. Shortly thereafter, Slater opened the door and ordered her to open the cash register.

After she exited the bathroom, with Slater leading her to the cash register, Mrs. Heitmeier saw the skinny perpetrator on the customer-side of the counter. When she opened the cash register, the skinny perpetrator, who was later identified as Austin Dyer, the petitioner in this case, leaned over the counter and removed the money. Slater then asked the victim for her car keys and she turned the keys over to petitioner.

9

Slater then demanded more money while he continued to search the store.  After threatening that he would be back if she called the police, he led Mrs. Heitmeier back to the bathroom.  At that point, Mrs. Heitmeier looked through the store's front window and saw petitioner behind the wheel of her car, ready to drive out of the parking lot.

Four days later, on October 29, 1997, while on routine patrol, Deputy Michael Jones spotted a black four-door Cadillac with a license plate matching that of Mrs. Heitmeier's stolen car traveling westbound in the 6200 block of the Westbank Expressway. He turned on his lights in an attempt to stop the vehicle, but the driver sped up.  After making several turns to avoid being stopped, the driver ended up on a dead-end street.  He exited the vehicle and fled on foot.  The driver, later identified as petitioner, was picked up a few blocks away by other police officers that had joined the pursuit.

In December of 1997, Detective Russell Brunet, the lead investigator on the case, received a tip from a confidential informant that Troy Slater had committed a string of armed robberies in the Marrero area.  Detective Brunet compiled a photographic array to show the victim. Mrs. Heitmeier identified Slater from the photographic lineup.  As a result of the identification, Slater was arrested.

On December 30, 1997, Slater gave a statement to

Detective Daniel O'Neil of the Jefferson Parish Sheriff's Office, confessing to numerous armed robberies, including the robbery at the Oldies but Goodies Store.  He stated that his accomplice for that robbery was a man known to him as "Black" who "got busted in the car." Based on that information, Detective Brunet compiled a photographic array including petitioner's picture.  Mrs. Heitmeier identified petitioner in the photographic lineup as the skinny perpetrator.

At trial, Mrs. Heitmeier testified that she was sure that petitioner was the man who had taken the money from the cash register and to whom she had given her car keys because he had spent approximately an hour in her store that day.  She also testified that it was daylight when she was robbed and she also had ample lighting in her store.

Troy Slater, a witness for the state, admitted that he had pled guilty on October 14, 1998 to five counts of armed robbery, including the Oldies but Goodies Store.  Initially, he refused to implicate petitioner, then admitted that, at his guilty plea proceeding, he had assented to the facts as recited by the district attorney, including that petitioner was his accomplice for the Oldies but Goodies robbery.

At trial, petitioner testified on his own behalf.  He admitted that he was convicted in November of 1993 of "entering an auto" and in January of 1994 for "possession of stolen property."

He also admitted that he was arrested for possession of the victim's stolen car.  He claimed that he did not know that the car was stolen but he knew that a guy named Derrick had rock-rented[14] the car the previous night.  Petitioner stated that he had helped Derrick by replacing the car's stolen battery and he was just test-driving the car to make sure that it was running correctly when he was stopped. Defendant denied robbing the Oldies but Goodies Store on October 25, 1997.

## III.  <u>STANDARD OF REVIEW</u>

        The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including §2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in state court proceedings.

        State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. §2254(d)(1) and receive deference unless they were "... 'contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000), <u>cert</u>. <u>denied</u>,

---

        [14]Petitioner testified that a "rock rental" occurs where one party exchanges the use of their automobile for drugs. He denied participation in the "rock rental."

532 U.S. 1039 (2001)(quoting 28 U.S.C. §2254(d)(1)).  The United

States Supreme Court has also advised that:

> Under the "contrary to" clause, a federal habeas corpus
> court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case
> differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing
> legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the
> prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Hill, 210 F.3d at

485.  Questions of fact decided by the state court are "presumed to

be correct ... and we will give deference to the state court's

decision unless it `was based on an unreasonable determination of

the facts in light of the evidence presented in the State court

proceeding.'"  Hill, 210 F.3d at 485, quoting 28 U.S.C.

§2254(d)(2)).

## IV.  ANALYSIS

### A. CLAIM 1): INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The seminal Supreme Court decision regarding ineffective

assistance of counsel is Strickland v. Washington, 466 U.S. 668,

697 (1984), wherein the Court held that in order to prove that

counsel was ineffective, petitioner must demonstrate that counsel's

performance was deficient and that the deficient performance

prejudiced the defense.  If a court finds that petitioner has made

13

an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the Strickland test, "it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (citing Strickland, 466 U.S. at 690).  To prove prejudice under the Strickland standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Before addressing petitioner's substantive ineffectiveness claims, the Court will address a related procedural demand, namely, that petitioner is entitled to an evidentiary hearing.  The basis of petitioner's demand is his assertion that a state evidentiary hearing, wherein trial counsel, Derrick Shepherd, testified, was inadequate.  Petitioner argues that the state hearing was inadequate because at the time Shepherd offered testimony, he was "a sitting State Senator and political rising star" with "significant inherent credibility." (Rec. doc. 11, p. 17).  That credibility, however, has been lost since Shepherd "now sits in a federal prison as a convicted felon and proven lair [sic]", having "betrayed his office, his oath as an attorney and

14

the public trust." Id. Accordingly, petitioner asserts that a federal evidentiary hearing should be held so that Shepherd can once again provide testimony without any inherent credibility being afforded to his testimony.

A habeas petitioner may be entitled to a federal evidentiary hearing under very limited circumstances if he fails to develop the factual basis of a claim in state court proceedings. 28 U.S.C. §2254(e)(2). In this instance, petitioner fully developed the basis of his post-conviction ineffectiveness claim. The state district court, in connection therewith, held three post-conviction hearings. The fact that petitioner is hoping, based on the alleged diminished credibility of a state evidentiary hearing witness, for a different outcome in a federal evidentiary hearing, is insufficient to warrant such a hearing under the restrictive provisions of §2254(e)(2).

### 1. Counsel Was Ineffective in Connection with Testimony of Troy Slater

Petitioner argues that counsel was ineffective in his handling of state witness, Troy Slater. According to petitioner, counsel failed to properly cross-examine Slater because, had his cross-examination been sufficient, Slater would not have exercised his Fifth Amendment right not to testify. Petitioner further asserts that counsel was ineffective due to his failure to strike the damaging testimony of Slater, failure to object to the State's

re-direct questioning of Slater after he asserted his Fifth Amendment privilege, failure to seek to re-cross Slater, and failure to have the jury removed from the courtroom to prevent them from being adversely affected by virtue of witnessing a bench conference during Slater's testimony.

A review of Mr. Slater's testimony reflects the following colloquy.

MR. PACIERA (prosecutor):
Q.  When you pled guilty last week to those 5 counts of armed robbery, was one of those counts an armed robbery on October the 25th, 1997?


A.  Yes.


Q.  So, you are in fact, one of the people that committed the armed robbery in that store; is that right?


A.  Yes.


Q.  There were - - she testified already and said that there were two people in there.  Was there more than one person in there?


A.  Me, myself.


Q.  And who else?


A.  I don't wanna answer.


Q.  You - - I didn't understand you?


A.  I don't wanna answer.

Mr. Paciera:

    Judge, I'd ask that you instruct the witness that he has to answer the question.

THE COURT:

    You need to answer the question, Mr. Slater.

MR. SLATER:

    Your honor, I ain't gonna answer that.

THE COURT:

    Mr. Slater, if you don't answer the question, I will hold you in contempt of court.

MR. SLATER:

    I understand that.

Q.  Mr. Slater, do you remember after you were arrested talking to Detective O'Neil?

A.  That's what he say, yeah.

Q.  Do you remember it?

A.  Yeah, I remember.

Q.  And at that time you told him that the person that committed that offense with you was a guy you knew as Blackie and that was the guy that was caught in the cadillac, you remember that?

A.  No, that's what he told me.

Q.  And you said that was right?

A.  Whatever.

MR. SLATER:

    I ain't got nothing to say, your honor.


THE COURT:

    Sir, you need to answer the questions.


MR. SLATER:

    I'm not gonna answer, your honor. The detective said that.

Q.  Do you remember giving a 22 page statement where you said that?


A.  No, that's what he said.


Q.  On October 14th, when you pled guilty to the 5 counts of armed robbery, do you remember talking about the count of Oldies But Goodies?


A.  Yes.


Q.  And you remember one of the things that you had to do to plead guilty was tell the judge what happened, you remember - - you remember that happening?


A.  Yeah, I remember - - I remember you told me I had to say that.


Q.  And we read out in court what happened?


A.  Yeah, all I did was say ... yeah.


Q.  You said yes, the facts that I had recited into the record were the right facts?


A.  Because that's what you told me I had to say.

Q.  And you said yes?

A.  And I said yes.

Q.  And the facts that I read into the record were that
you and this defendant, Dyer, were the two people that
went in the store, put a gun to the lady's head and made
her give money out of the register and gave - - and take
jewelry from her, you remember that?

A.  Uh hunh. (Affirmative)

    THE COURT:
        You need to answer, sir.

A.  Yeah, I remember.

Q.  He shook his head yes.

St. rec., vol. 2, pp. 360-362.

        Thereafter, defense counsel commenced his cross-
examination, fleshing out Slater's testimony to the effect that
officials forced him to implicate petitioner in the robbery.

BY MR. SHEPHERD:
Q. [D]id you say anything to the police officers or to
the District Attorney o[f] your own free will?

A.  No.

Q.  Were you in fact coerced into saying yes to anything
that has any dealings with Mr. Dyer?

A.  They threatened me.

Q.  How did they threaten you, sir?

A.  They told me, you know, they gonna give me life.  All
time, no if, no ands or buts; life.

St. rec., vol. 2, pp. 362-363.

Following Slater's testimony to the effect that officials coerced his admission that petitioner had been his partner in crime, the trial court called for a bench conference which included the prosecutor, petitioner's counsel, and Mr. Slater's counsel. There is no evidence that the jury heard the bench conference discussion wherein the trial court expressed concern that Mr. Slater may be admitting to perjury by indicating that he lied during his <u>Boykin</u> examination.  Thereafter, the trial court gave Slater's attorney an opportunity to privately discuss the matter with Slater and advised the jury of this fact, stating: "I'm giving [Mr. Slater] an opportunity to have a conversation with [his attorney] off the record."  (St. rec., vol. 2, p. 364).

It was as a result of this conference, wherein counsel advised Slater that by virtue of his testimony he could be charged with perjury, and not due to any inept cross-examination on the part of defense counsel, that Slater opted to invoke his Fifth Amendment privilege.

(CROSS EXAMINATION CONTINUED BY MR. SHEPHERD)
Q.  Mr. Slater, you've had an opportunity to speak with
your attorney and if you feel no obligation to answer any

20

further questions, I understand.  I'd just simply like to
ask you one question, Mr. Slater.
Did you in fact rob the Oldies But Goodies Store with
Austin Dyer?

    A.  I'm taking the Fifth.

(St. rec., vol. 2, p. 365).

        Additionally, there is no evidence to suggest that
petitioner was in any way prejudiced by the fact that the jury was
not removed from the courtroom during the above-described bench
conference.  Similarly, it is evident that petitioner was not
prejudiced by counsel's failure to strike Slater's testimony.  Said
testimony, rather than "damaging" as characterized by petitioner,
was generally favorable to petitioner's defense.

        Petitioner's claims that counsel was ineffective by
virtue of his failure to object to the State's re-direct
examination of Slater and failure to re-cross Slater are likewise
without merit.  As shown below, Slater's re-direct testimony was
not damaging to petitioner's defense and, as such, there was no
need for a re-cross examination.

                    REDIRECT EXAMINATION
    BY MR. PACIERA:
    Q.  Mr. Slater, you said that you did speak with
    Detective O'Neil; is that right?

    A.  I'm taking the Fifth.

                            21

THE COURT:

    I'm going to ask - - order you to answer that question, sir.

MR. SLATER:

    Yeah, I talked with him.

Q.  And when you talked to Detective O'Neil, did you tell him that the other person involved in the robbery was a guy you knew as Blackie and who was a guy that was busted in the cadillac?

A.  I'm taking the Fifth on that.

THE COURT:

    I'm going to allow it.

A.  I told you I ain't got nothing to say.  And now you told me about the - - you came over there, the other day, you told me about Austin, you did, you know ....

MR. PACIERA:

    No further questions.

(St. rec., vol. 2, pp. 366-367).

### 2. Counsel Was Ineffective in Failing to Provide Name of Alibi Witness

Petitioner asserts that defense counsel "committed a major error by not providing the State with the name of an alibi witness, Levar Herron."  (Rec. doc. 11, p. 7).  According to petitioner, Herron, who is no relation to petitioner, would have testified that he was cutting petitioner's hair at 11:00 a.m., the time petitioner and Slater allegedly entered the "Oldies But

22

Goodies" store on the first occasion.

Petitioner raised the instant issue on direct appeal in the context that the trial court erred in not allowing Levor Herron to testify.  In addressing the issue, the Louisiana Fifth Circuit examined the applicable facts.

> On the second day of trial, defense counsel informed the trial court and the district attorney that he wished to offer the testimony of Levar Herron as an alibi witness.  The previous day, counsel had given the witness's name to the trial court and the state, but he did not inform the state that Herron would be an alibi witness.  When defense counsel attempted to call the witness, the state opposed the defense request, claiming surprise and the inability to properly investigate the witness and meet the alibi defense.  Defense counsel argued that Herron would testify for "five minutes" that he gave defendant a haircut at 11:00 a.m. on Saturday, October 25, 1997, to corroborate defendant's alibi for the morning of the robbery.

Dyer, 794 So.2d at 10.

The Fifth Circuit ultimately rejected petitioner's claim, reasoning:

> In this case, the record reflects that three other alibi witnesses testified for defendant.  Defendant's mother and aunt testified that defendant went to get his hair cut on Saturday, October 25, 1997 at about 11:00 or 11:30 a.m., then returned to his mother's house.  After that, he ran a few errands for his mother, then stayed around the house with his family until about 5:00 p.m. that day.  Ivory Scott, defendant's uncle, also testified that when he arrived at defendant's mother's house at about 3:30 p.m., defendant was at the house.
> The excluded testimony from Herron, who would have testified that defendant got a haircut at 11:00 on Saturday morning, would have been cumulative of the

testimony from defendant's mother and aunt.  Moreover, while Herron's testimony could have accounted for defendant's whereabouts Saturday morning, Herron's testimony could not have accounted for defendant's whereabouts during the armed robbery, which occurred more than three hours later.

Id. at 11.

Based upon the above, this Court finds that petitioner was not prejudiced by counsel's alleged deficiency in failing to provide timely notice of yet another alibi witness, Levar Herron. As such, petitioner's ineffectiveness claim is without merit.

### 3. Counsel Was Ineffective in Failing to Call Regina Rogers as a Witness

Petitioner argues that counsel erred in failing to call Regina Rogers as a witness.  Regina Rogers was in the victim's stolen car with petitioner when they were apprehended by police. According to petitioner, had she been called as a witness, Rogers would have testified that the victim stared at petitioner at the scene of his apprehension while petitioner was sitting in a police car.  As such, petitioner contends that the victim's identification of him was tainted.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002), citing Sayre v.

24

Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001).[15]   Under the Strickland test, to prove prejudice, in the context of a claim that counsel was deficient in failing to call a witness, petitioner must show that it is reasonably probable that had the witness, Regina Rogers, been called, the result of his trial proceeding would have been different.   Based upon its review of the trial testimony of Barbara Heitmeier, the victim, along with the testimony of Detective Brunet, the investigating officer, the Court finds that petitioner has failed to meet his burden of proof.

First, Barbara Heitmeier made clear at trial that she was positive with respect to her identification of petitioner as one of the men who robbed her at gunpoint.

Q.  You said that when you first saw the two people who came in the store together, that was at approximately 11:00 o'clock in the morning.

A.  Approximately, yes.

---

[15]In addition to his complaint that counsel failed to call Regina Rogers, petitioner also complains that counsel failed to "uncover other witnesses who could have cleared his client." (Rec. doc. 11, p. 10).  Petitioner suggests that counsel should have interviewed "other customers who were in the store prior to the robbery." Id.  However, in the absence of any names of these prospective witness, along with some idea as to what these witnesses would have stated to "clear" petitioner, the Court finds petitioner's allegation in this regard too speculative to warrant further consideration.

In addition, Dyer also contends that counsel failed to engage in appropriate pretrial investigation of his case. (Rec. doc. 11, p.5).  However, he gives no concrete factual basis sufficient to establish prejudice and, therefore, the Court declines to discuss this argument further.

Q.  It was sunlight?

A.  Yes.

Q.  You had lighting in your store?

A.  Yes.

Q.  How does the lighting in your store compare to the lighting that's in this courtroom right now?

A.  Pretty much the same.

Q.  You got a good look at both of them?

A. Yes, sir.

Q.  When they came back in the afternoon, what were the lighting conditions?

A.  About the same....

Q.  So, you have ample light...

A.  Ample light...

Q. ... to see what was going on and to see the people that were doing this to you, is that right?

A.  Sure.

Q.  And is there any doubt in your mind that this is one of those people?

A.  No, sir.

(St. rec., vol. 1, pp. 223-224).

Heitmeier was equally clear about the fact that her identification of petitioner did not arise from any glimpse of petitioner at the scene where her car was recovered.

A.  I got a phone call while I was at work from a police officer that said, "Your car has been recovered."  And they came and picked me up to bring me, I assume, to identify my car.

Q.  Okay.  Did you see your car?

A.  Yes, I did....

Q.  Okay.  Now, at that time were you shown any perpetrators or alleged perpetrators?

A.  No.

Q.  In other words, they didn't - - there was no showups; they didn't ask you to identify anybody?

A.  No.

(St. rec., vol. 1, p. 226).

Heitmeier stated that it was later, at her home, that she was presented with a photographic lineup for the purpose of identifying another of the perpetrators who robbed her at gunpoint.[16]  In connection with this last photographic lineup, Ms.

---

[16]Heitmeier explained that she had previously identified one of the perpetrators, Slater, in an earlier photographic lineup. (St. rec., vol. 1, pp. 228-229).

27

Heitmeier stated:

Q.  Where were you when you were shown those photographs?

A.  At my home.

Q.  I'm going to show you now what's been marked for
identification purposes as state's exhibit 1... [a]nd ask
if those are the photographs that were shown to you at
your home?

A.  Yes, they are.

Q.  When you were shown those photographs by Detective
Brunet, what if anything did he ask you to do?

A.  He said he had another lineup and he put them in
front of me and said, "I want you to very carefully look
at these photographs and see if you recognize anyone."

Q.  And did you recognize anyone?

A.  Yes, I did....

Q.  [T]here are numbers on those 6 photographs, which
number is it that you recognize?

A.  I recognized number 3....

Q.  And that's the photograph of the guy that you
referred to as the skinnier one?

A.  Yes it is.

Q.  Is that this (pointing) defendant?

A.  Yes it is.

(St. rec., vol. 1, pp. 227-228).

Heitmeier's testimony as to what she saw when she was driven to the scene to identify her car, was corroborated by Detective Brunet.  Brunet explained that petitioner was actually captured away from the stolen car as he tried to escape on foot after he was forced to stop the car at a dead end.  At that point, petitioner was in the custody of another detective and when they spoke about bringing petitioner back to the scene, i.e., bringing him back to the stolen car, Brunet refused to allow it, explaining:

> They were gonna bring Mrs. Heitmeier...to the scene for a possible identification of Mr. Dyer as possibly a perpetrator in a robbery....  There had been what, 3 or 4 days that had passed [between] the actual robbery and...the apprehension of the vehicle....  I felt that there was too much time that had elapsed between the crime and them bringing her to the scene to have her do a single person witness ID of Mr. Dyer.
>
> So, I had her removed from the scene so she wouldn't see him.  That way, it wouldn't taint any further identification process we tried to do later on.
>
> Q.  So, you didn't want to just show her one particular individual?
>
> A.  That's correct.
>
> Q.  Okay.  Now, detective, uh, did Mrs. Heitmeier in fact go the scene itself?
>
> A.  She was on the scene.  I had her removed by the uh, Patrol Unit that brought her.
>
> Q.  Did she identify the car as being hers and the one that was taken in the robbery?

A.  She identified the car as being hers and the one
taken in the robbery.  And then she was removed from the
scene.

Q.  And she was not shown the defendant at that time?

A.  That is correct.

(St. rec., vol. 2, p. 307).

Based upon the above, the Court finds that it is not
reasonably probably that had counsel called Regina Rogers as a
witness, the outcome of petitioner's proceeding would have been
different.  As such, petitioner has failed to show the requisite
prejudice to support his ineffectiveness claim.

### 4.  Counsel Was Ineffective in Failing to Challenge Cross-Racial Identification

Petitioner argues that counsel was ineffective in failing
to obtain an expert to testify regarding the inherent unreliability
of cross-racial identification, i.e., when a person of one race,
such as Mrs. Heitmeier who is white, is asked to identify a person
of another race, such as petitioner who is black.  Petitioner
asserts that "[g]iven the fact that the victim could not even
identify Slater on the first photo lineup, [cross-racial
identification] was an issue that merited more exploration." (Rec.
doc. 11, p. 16).

Petitioner is correct that the victim failed to identify

30

Slater in the first photographic lineup.  However, the victim's failure in this regard was not attributable to any cross-racial identification problem.  Instead, it was attributable to the fact that an outdated picture of Slater was used in the first photographic lineup.  Detective Brunet explained that when they compiled the first lineup, they used a photograph of Slater which was eleven years old, from 1987. (St. rec., vol. 2. pp. 303-304). When an updated photograph was used in the second lineup, Mrs. Heitmeier had no problem identifying Slater as one of her assailants. (St. rec., vol. 2, pp. 314-315).

Mrs. Heitmeier's identification of petitioner as one of her assailants was equally unequivocal.  As noted earlier, Heitmeier testified that she got a good look at the robbers as they came into her store on two occasions and she had ample lighting in the store. When shown a lineup containing petitioner's picture, she identified petitioner without any doubt that he was one of the men who had entered her store and robbed her at gunpoint.

Based upon the certainty of the victim's identification, the Court finds that petitioner has failed to show how he was prejudiced as a result of counsel's failure to obtain expert testimony on the subject of cross-racial identification.  As such, petitioner's ineffectiveness claim is without merit.

### 5. Counsel Was Ineffective in Failing to Challenge Juror Nancy Dees

Petitioner points to the following statement by Nancy Dees during defense counsel's voir dire questioning: "reasonable doubt hopefully will come to me at the right time when the evidence has been presented and I've heard the defendant." (St. rec., vol. 4, p. 60). Based upon the above, petitioner charges that Dees "blatantly stated that she needed to hear from the defendant to ascertain whether reasonable doubt existed." (Rec. doc. 11, p. 17). Because such a statement is violative of his right not to testify at trial, petitioner argues that counsel was ineffective in failing to challenge Dees.

A review of the voir dire transcript reflects that petitioner has mischaracterized Juror Dees' remark. The remark was made not in the context of counsel's inquiry as to whether voir dire members would hold petitioner's failure to testify against him. Rather, the remark was made in the context of whether prospective jurors, upon a finding of reasonable doubt, could render a verdict of not guilty. In response to this inquiry, Dees responded in the affirmative, stating that she understood that a defendant was presumed innocent until proven guilty and that, upon a finding of reasonable doubt, she would be able to render a verdict of not guilty. (St. rec., vol. 4, pp. 59-61).

Further, assuming _arguendo_ that Dees did believe that she needed to hear from petitioner before she could determine whether reasonable doubt existed, petitioner was not prejudiced because

32

Dees did hear from petitioner.  A review of the trial transcript reflects that petitioner took the witness stand, clearly testifying that he did not commit the armed robbery for which he was standing trial. (St. rec., vol. 2, p. 398).  Thus, counsel clearly was not ineffective for not attempting to strike Dees during voir dire based upon her alleged belief that she needed to hear from petitioner.

### B. CLAIMS 2), 3), 4), and 5): WRONGFUL DISMISSAL OF CLAIMS BASED ON PROCEDURAL GROUNDS

As noted earlier, petitioner raised claims on post-conviction which the district court, on May 13, 2009, denied based on petitioner's failure to raise said claims on direct appeal as required under La.C.Cr.P. art. 930.4(C).[17]  These procedurally barred claims are listed below:

a) he was deprived of his right to a fair trial by the State's use of peremptory challenges to systematically eliminate minorities from his jury in violation of Batson v. Kentucky, 476 U.S. 79 (1986);

b) the State engaged in prosecutorial misconduct when it called a witness whom prosecutors knew would invoke his Fifth Amendment right against self-incrimination;

c) the district court erred in failing to grant relief on grounds of "actual innocence" after Troy Slater's

---

[17]La.C.Cr.P. art. 930.4(C) provides:

If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief.

33

testimony at an evidentiary hearing exonerating petitioner in the robbery;

d) his constitutional right under the confrontation clause was violated when the trial court curtailed and deprived the defense cross-examination of Troy Slater when he invoked his Fifth Amendment privilege;

e) his right to a fair trial was violated when the trial judge, in the presence of the jury, allowed the State to call Troy Slater, who had been convicted of the same offense which petitioner was charged with committing, knowing Slater would invoke his Fifth Amendment privilege;

f) his right to compulsory process was violated when the trial court:

    i) refused to recall the victim who was previously ordered to remain available as a defense witness, but who, instead, went home;

    ii) made the victim's recall incumbent upon petitioner incurring the cost of her return;

g) his right to a jury trial was violated when the trial court failed to conduct an "in camera interview" of an elderly woman juror who appeared to have fallen asleep or to be suffering from "some type of disorder".

On October 20, 2009, the Louisiana Fifth Circuit found that the district court's May 13, 2009 decision was, for the most part, correct. The state appellate court determined that the district court erred in barring petitioner's actual innocence claim since an actual innocence claim "arguably circumvents the default provision of La.C.Cr.P. art. 930.4(C)". The Louisiana Fifth Circuit, however, found that petitioner's claim of actual innocence "fails on the merits." See State v. Dyer, No. 2009-WR-0629, p. 4

34

(La. App. 5 Cir. Oct. 20, 2009) (unpublished opinion) (St. rec., vol 9).   The Louisiana Supreme Court denied petitioner's writ application without opinion.   State v. Dyer, 48 So.3d 289 (La. 2010).   Petitioner argues that the state courts erred in dismissing his claims as described above.

### 1.  Dismissal on the Merits of Actual Innocence Claim

Petitioner argues that his actual innocence was established via Troy Slater's testimony during a January 25, 2007 evidentiary hearing wherein Slater exonerated petitioner. Specifically, Slater testified:

> BY MR. CREDO [assistant district attorney]:
> Q.  You did not want to testify and name the person that robbed the Oldies But Goodies Shop with you; is that fair?
>
> A.  I robbed it myself.  I told them it was just me.
>
> Q.  Okay.  Now Mr. Slater, I'm reminding you that perjury is a crime.  You're saying here under oath that you robbed the Oldies But Goodies Store by yourself?
>
> A.  Yeah, I done it by myself.

(St. rec., vol. 10, transcript of January 25, 2007 evidentiary hearing, p. 13).

In rejecting the instant claim, the state appellate court first observed that Slater, during petitioner's trial, initially

35

"refused to implicate the Relator, but he then admitted that he stated the Relator was his accomplice when he entered his guilty plea." Dyer, No. 2009-WR-0629, p. 4.  A review of Slater's trial testimony reflects that the state appellate court's observation is correct.  Slater initially refused to testify when asked who, along with himself, robbed the Oldies But Goodies Store.  See supra at pp. 16-19.  However, Slater ultimately responded in the affirmative when asked whether he admitted during his Boykin hearing that he, along with Dyer, "were the two people that went in the store, put a gun to the lady's head and made her give money out of the register and gave  - - and take jewelry from her...." (St. rec., vol. 2, p. 362).

The state appellate court next provided that "[a]s a general matter, recantations of trial testimony should be looked upon with utmost suspicion. State v. Prudholm, 446 So.2d 729, 735 (La. 1984); State v. Clayton, 427 So.2d 827, 832 (La. 1982)." Dyer, No. 2009-WR-0629, p. 4.  The same is true under federal law. See Clark v. Epps, 359 Fed. Appx. 481, 486 n.2 (5th Cir. 2009), quoting United States v. Smith, 433 F.2d 149, 150 (5th Cir. 1970) (citation omitted) ("recantations are generally looked upon with the 'utmost suspicion.'").  Further, the Louisiana Fifth Circuit noted: "[T]he credibility of Mr. Slater's claim that he was the sole perpetrator is severely undercut by the victim who testified unequivocally that two men committed the armed robbery at her store

and identified the Relator and his co-defendant as the perpetrators." <u>Dyer</u>, No. 2009-WR-0629, p. 4.

Based upon the above, this Court finds that petitioner's actual innocence claim "fails on the merits".

## 2.  Procedural Bar of Remaining Claims

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991); <u>Glover v. Cain</u>, 128 F.3d 900, 902 (5th Cir. 1997); <u>Amos v. Scott</u>, 61 F.3d 333, 338 (5th Cir.1995) (citing <u>Harris v. Reed</u>, 489 U.S. 255, 260, 262 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. <u>Amos</u>, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. <u>Harris</u>, 489 U.S. at 263; <u>Glover</u>, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a

federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 802 (1991).

For this state-imposed procedural bar to prevent review by this Court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. <u>Amos</u>, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. <u>Glover</u>, 128 F.3d at 902. A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. <u>Id</u>.

In the instant matter, both the state district court and the state appellate court issued reasoned opinions, finding petitioner's claims, delineated above as a), b), d), e), f(i), f(ii), and g), to be procedurally barred pursuant to La.C.Cr.P. art. 930.4(C). Article 930.4(C) has been recognized as an independent and adequate state procedural ground barring federal habeas corpus relief. <u>See</u> <u>Lewis v. Cain</u>, No. 2009-3240, 2010 WL 4363546, *9 (E.D. La. Aug. 19, 2010) (Chasez, MJ.), <u>adopted</u>, 2010 WL 4340795 (E.D. La. Oct. 21, 2010 (Feldman, J.); <u>Hurd v. Cain</u>, No. 2009-3112, 2009 WL 3063354, *7 (E.D. La. Sept. 23, 2009) (Shushan,

MJ), <u>adopted</u> (Lemmon, J.);   <u>Rose v. Prince</u>, 2009 WL 2922801, *4 (E.D. La. Sept. 10, 2009) (Chasez, MJ.), <u>adopted</u> (Vance, J.).  When the state courts rely on this procedural default in dismissing the claims, as they did here, the claims are immune from federal review.  <u>Id</u>.

A federal habeas petitioner, however, may be excepted from the procedural default rule if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claims will result in a "fundamental miscarriage of justice."  <u>Glover</u>, 128 F.3d at 902, <u>citing</u> <u>Coleman</u>, 501 U.S. at 731-32; <u>Amos</u>, 61 F.3d at 338-39, <u>citing</u> <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  The mere fact that petitioner failed to recognize the factual or legal basis for his claims, or failed to raise the claims despite recognizing them, does not constitute cause for a procedural default.  <u>Id</u>. at 486.

### a. Cause for Failure to Raise on Direct Appeal <u>Batson</u> Violation Claim

In support of his claim that he had cause for failing to raise his <u>Batson</u> challenge on direct appeal, petitioner offers the

39

following argument:

> The record showed that trial defense counsel had
> made a timely objection to the State's peremptory
> challenge abuse.  The objection was not reflected in the
> minute entry that was provided to appellate defense
> counsel.  Because it was not reflected in the minute
> entry, appellate defense counsel would have had no way of
> recognizing the issue and ordering a transcript of the
> voir dire.  Thus the failure to do so was excusable.

(Rec. doc. 11, p. 18).

The above argument is insufficient to show the requisite
cause since petitioner was present at trial and heard trial counsel
timely object to the State's alleged prejudicial use of its
peremptory challenges.  The fact that petitioner failed to
recognize that he had a basis upon which to raise a Batson claim on
appeal and failed to relay to appellate counsel that trial counsel
had raised a Batson objection, is insufficient to constitute cause
for his procedural default. See Murray, supra.

### b.  Cause for Failure to Raise on Direct Appeal Prosecutorial Misconduct Claim

Petitioner argues that his failure to raise his
prosecutorial misconduct claim on direct appeal is attributable to
his appellate counsel's belief that such claims "are best brought
during post conviction relief proceedings." (Rec. doc. 11, p. 19)

Claims of counsel ineffectiveness, in this case,
counsel's failure to assert prosecutorial misconduct on appeal, can

in some circumstances serve as a cause to overcome a procedural bar.  See Murray, supra.  However, an ineffective assistance of counsel claim cannot do so if it is itself procedurally defaulted. In such circumstances, the petitioner must first also show "cause and prejudice" for the defaulted ineffective assistance of counsel claim.  See Edwards v. Carpenter, 529 U.S. 446, 452-453 (2000).

It is undisputed that petitioner never raised his claim of ineffective assistance of appellate counsel with the state courts.  As such, he has failed to exhaust his state court remedies as required under Rose v. Lundy, supra, and any attempt to do so at this point would be procedurally barred as untimely under La.C.Cr. P. Art. 930.8.[18]  See Mays v. Cain, 2011 WL 2295173, *4 (E.D. La. June 9, 2011) (Lemelle, J.) ("[A] procedural default occurs when a prisoner fails to exhaust available state remedies, and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'  Coleman v. Thompson, 501 U.S. at 735 n.1; Nobles v. Johnson, 127 F.3d 409 (5th Cir. 1997).").  As petitioner has made no showing of "cause and prejudice" in connection with the

---

[18]Article 930.8, as it existed at the time petitioner was convicted, provided petitioners with three years from the date their convictions and sentences became final to timely seek post-conviction relief.  Effective August 15, 1999, La.C.Cr.P. art. 930.8 was amended, shortening the time limit for seeking post-conviction relief from three to two years.  See State v. Mickel, 864 So.2d 661, 663 (La. App. 5 Cir. 2003), citing 1999 La. Acts 1262.

procedural default of his ineffective assistance of appellate counsel claim, the Court finds that said claim cannot be used as a basis for cause in petitioner's effort to overcome the procedural default of his prosecutorial misconduct claim.

Petitioner also suggests that it was best to delay bringing his prosecutorial misconduct claim until post-conviction because he was able to "develop information" during a post-conviction evidentiary hearing which made his claim stronger. (Rec. doc. 11, p. 19).  However, the fact that petitioner did not have all the evidence to support his claim when it should have been raised, in this case, on direct appeal, is insufficient to excuse his default.  See Flanagan v. Johnson, 154 F.3d 196, 198-199 (5th Cir. 1998) (fact that delay was attributable to petitioner's effort to obtain affidavit supporting claim did not excuse untimeliness of claim); Johnson v. Lambdin, 2007 WL 521920, *3 (M.D. Fla. Feb. 15, 2007) (same).

   c. **Cause for Failure to Raise on Direct Appeal the Following Claims:**
      1) **Confrontation Clause Violation**
      2) **Court Error in Allowing State to Call Troy Slater as a Witness**
      3) **Denial of Right to Compulsory Process**
      4) **Failure to Perform "In Camera Interview"**

Petitioner argues that he had cause for not raising the above claims on direct appeal because the state appellate court, by

virtue of its April 20, 2001 Order, gave him permission to raise these claims on post-conviction.

A review of the pertinent record reflects that petitioner, in connection with his direct appeal, 2000-KA-1866, filed a pro se brief. (St. rec., vol. 3).  In this pro se brief, petitioner raised most of the claims set forth above.  In its April 20, 2001 Order, State v. Dyer, No. 2000-KA-1866 (La. App. 5 Cir. Apr. 20, 2001) (unpublished decision) (St. rec., vol. 3), the Louisiana Fifth Circuit recognized that petitioner had filed a pro se brief, but noted that it was untimely.[19]  Due to its untimeliness, the state appellate court determined that it would not address the assignments of error set forth in petitioner's brief, providing that said claims could be raised in a post-conviction proceeding.

Petitioner argues that by virtue of its April 20, 2001 Order, the Louisiana Fifth Circuit excused the untimeliness of his brief, directing him to re-urge his claims on post-conviction.  For the following reasons, petitioner's argument is without merit.

First, the Louisiana Fifth Circuit clearly did not excuse the untimeliness of petitioner's pro se brief as evidenced by the fact that the court refused to address the arguments set forth

_____

[19]Specifically, the state appellate court noted that petitioner's deadline, as set forth in a previous Order, was March 30, 2001.  Petitioner, however, did not file his pro se brief until April 17, 2001.

therein.   Second, under petitioner's interpretation of the state appellate court's Order, there would be no adverse consequence to a party filing his appellate brief late.   The party would simply re-file his brief on post-conviction, thereby obliterating the restrictions, set forth under La.C.Cr.P. art. 930.3, as to what claims can and cannot be brought on post-conviction.[20]   As this Court does not believe that was the Louisiana Fifth Circuit's intent, petitioner's assertion that he had cause for failing to properly bring the above-listed claims on direct appeal is without merit.

### d.  Prejudice Arising from Court's Failure to Address Merits of Above Claims

---

[20]La.C.Cr.P. art. 930.3 provides:

If the petitioner is in custody after sentence for conviction for an offense, relief shall be granted only on the following grounds:

(1) The conviction was obtained in violation of the constitution of the United States or the state of Louisiana;
(2) The court exceeded its jurisdiction;
(3) The conviction or sentence subjected him to double jeopardy;
(4) The limitations on the institution of prosecution had expired;
(5) The statute creating the offense for which he was convicted and sentenced is unconstitutional; or
(6) The conviction or sentence constitute the ex post facto application of law in violation of the constitution of the United States or the state of Louisiana.
(7) The results of DNA testing performed pursuant to an application granted under Article 926.1 proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hoque v. Johnson, 131 F.3d 466, 497 (5th Cir.1997) (citing Engle, 456 U.S. at 134 n. 43). Having failed to show any objective cause for his default, the Court need not determine whether prejudice existed. Ratcliff v. Estelle, 597 F.2d 474 (5th Cir.1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir.1977)).

### e.   Fundamental Miscarriage of Justice/Actual Innocence

Based upon petitioner's failure to show cause for his procedural default, the above claims are procedurally barred from review by this Court absent a showing that a fundamental miscarriage of justice will occur if the merits of the claims are not reviewed. Hoque, 131 F.3d at 497, citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992). "The Supreme Court has held this exception applicable to procedurally defaulted claims, stating that where 'a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Smith v. Collins, 977 F.2d 951, 958 (5th Cir. 1992), cert. denied, 510 U.S. 829, 114 S.Ct. 97, 126 L.Ed.2d 64 (1993), quoting Carrier, 477 U.S. at 496.

As discussed above, petitioner's claim of actual innocence is based upon the testimony of Troy Slater during a post-

45

conviction hearing in which he recanted his <u>Boykin</u> testimony and trial testimony, stating that he alone committed the pertinent armed robbery.  However, as noted earlier, recantations are not favored in habeas review due to their inherent unreliability. Further, petitioner's alleged innocence rings hollow in the face of the victim's testimony in which she stated that she got a good look at her assailants and she positively identified petitioner as one of those assailants.  <u>See</u> discussion <u>supra</u> at pp. 25-28. Accordingly, the Court finds that petitioner has failed to make the required showing of actual innocence.

<b><u>RECOMMENDATION</u></b>

It is therefore recommended that the application for federal habeas corpus relief of Austin Dyer be dismissed with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. §636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415,

1430 (5th Cir. 1996)(*en banc*).[21]

New Orleans, Louisiana, this 12th day of _____June_____, 2013.

ALMA L. CHASEZ
United States Magistrate Judge

---

[21]Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.